

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-12-2009

# State Auto Prop Cslt v. Pro Design

Precedential or Non-Precedential: Precedential

Docket No. 08-3006

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"State Auto Prop Cslt v. Pro Design" (2009). *2009 Decisions.* Paper 1275.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1275

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 08-3006

———

STATE AUTO PROPERTY & CASUALTY INSURANCE
COMPANY,

Appellant

v.

PRO DESIGN, P.C.

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 07-cv-01415)
District Judge: Honorable James M. Munley

———

Argued on April 16, 2009

Before: McKEE, SMITH, and VAN ANTWERPEN, <u>Circuit
Judges</u>.

(Filed : May 12, 2009)

Charles J. Daly, Esq. (Argued)
1155 Business Center Drive
Horsham, PA 19055

 *Counsel for Appellant*

John E. Kusturiss, Jr., Esq. (Argued)
323 East Front Street
Media, PA 19063

 *Counsel for Appellee*

Robert E. Kelly, Jr., Esq.
Kelly, Parker, & Cohen
300 North Second Street
10th Floor
Harrisburg, PA 17101

 *Counsel for Pennsylvania Defense Institute*
 *Amicus Appellant*

Mitchell Clair, Esq. (Argued)
Donald F. Manchel & Associates
1515 Market Street
Suite 1020
Philadelphia, PA 19102

Scott B. Cooper, Esq.
Schmidt, Ronca & Kramer
209 State Street
Harrisburg, PA 17101

*Counsel for Pennsylvania Association for Justice*
*Amicus Appellee*

————

OPINION OF THE COURT

————

VAN ANTWERPEN, *Circuit Judge*.

Appellant State Auto Property & Casualty Insurance Company[1] brought a declaratory judgment action in which it sought a determination of the amount of underinsured motorist (UIM) coverage owed to Appellee Pro Design, P.C. At the inception of a single vehicle policy, Appellee signed a form indicating that it waived "stacked" UIM benefits in exchange for a lower premium. Additional vehicles were later added to the policy. Appellant contended that the initial waiver remained valid because Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 PA. CONS. STAT. ANN. § 1701-1799.7, does not require the execution of additional stacking waivers when new vehicles are added to a single-vehicle policy. To resolve this action, the District Court had to interpret caselaw from the Supreme Court of Pennsylvania and, ruling in favor of Pro Design, predicted

_____

[1]The District Court's opinion, save for the caption, erroneously refers to Appellant as "State Farm Auto Property & Casualty Insurance Company."

3

that that Court would have required the execution of a new waiver upon the addition of the second vehicle. For the reasons that follow, we reverse the District Court's order granting summary judgment to Appellee, as we predict that the Supreme Court of Pennsylvania would, in keeping with its most recent decision addressing stacking waivers, follow the recommendation of Pennsylvania's Insurance Commissioner and hold that Appellee's initial waiver of stacked UIM benefits remained valid despite the addition of vehicles to the policy.

## I.

On October 28, 2006, Ronald and Christine Dillman were involved in an automobile accident while riding in a vehicle insured under a Business Auto Policy issued by Appellant. At its inception, on June 6, 2001, the policy covered only one vehicle and provided for $35,000 in underinsured motorist (UIM) coverage. Ronald Dillman, on behalf of Appellee, signed a written waiver of "stacked" UIM coverage at this time.[2] The policy was renewed on an annual basis in 2002, 2003, and 2004. On August 17, 2004, during the June 6, 2004, to June 6, 2005, policy period, Appellee added a second vehicle to the policy. The policy was renewed for June 6, 2005, to June 6, 2006, and, on November 24, 2005, a third vehicle was added. Appellant did not provide

---

[2]This waiver used the language mandated by 75 PA. CONS. STAT. ANN. § 1738(d)(2). *See* n.5 and accompanying text, *infra*.

4

Appellee with an opportunity to sign additional stacking waivers upon adding the second and third vehicles to the policy. On June 6, 2006, the policy was renewed for another year, until June 6, 2007; it was during this policy period that the accident occurred. The policy at all relevant times had the following "after-acquired-vehicle"[3] clause:

> Owned Autos You Acquire After The Policy Begins
> 1.      If Symbols 1, 2, 3, 4, 5 or 6 are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy

---

[3]According to Pennsylvania's Insurance Commissioner, the mechanism by which vehicles generally are added to existing policies is via "newly acquired vehicle clauses," which are made practically necessary by the mandate of the MVFRL for financial responsibility as a prerequisite to operation of a motor vehicle, *see* 75 Pa.C.S. § 1786, and are included universally within automobile insurance policies issued in Pennsylvania. The clause explicitly permits consumers to extend existing coverage, with the same applicable types of coverage and limits, to new and/or substitute vehicles, with coverage applying automatically upon acquisition, subject to various conditions, including a requirement of timely subsequent notice to the insurer.
*Sackett v. Nationwide Mutual Insurance Co.* (*Sackett II*), 940 A.2d 329, 331 (Pa. 2007).

5

period.

2. But, if Symbol 7 is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

    a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

    b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

The parties agree that "Symbol 7" was entered in the relevant part of the policy.

Appellant, in response to Appellee's claim for UIM benefits, filed a declaratory judgment action to determine its obligation under the insurance policy, ultimately taking the position that stacking of UIM benefits was waived, i.e., that the liability limit is $35,000. Appellee, on the other hand, argues that stacking does apply and that the liability limit is $105,000—$35,000 for each of the three vehicles covered by the policy. The District Court concluded that the June 6, 2001, stacking waiver was invalid because of the addition of new vehicles to the policy and thus granted summary judgment in favor of Appellee.

**II.**

6

The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction under 28 U.S.C. § 1291. The substantive law of Pennsylvania applies to this case. *See Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938). Our review of the District Court's decision is plenary, and we apply the same standard as the District Court to determine whether summary judgment was appropriate. *Norfolk Southern Railway Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008). A grant of summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The underlying facts of this case are not in dispute.

### III.

Intra-policy stacking of UIM benefits refers to the multiplication of the limits of UIM coverage under a single automobile insurance policy by the number of vehicles insured by that policy.[4] The MVFRL provides for intra-policy stacking:

When more than one vehicle is insured under one . . . polic[y] providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is

_____

[4]Inter-policy stacking, on the other hand, involves the cumulation of the coverage limits from separate insurance policies.

an insured.

75 PA. CONS. STAT. ANN. § 1738(a). Section 1738(b), however, provides that, notwithstanding § 1738(a), "a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured." The statute further requires that

> [e]ach named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

75 PA. CONS. STAT. ANN. § 1738(c). Pennsylvania law thus presumes that stacking applies unless an insured waives it by executing a stacking waiver containing the language provided in § 1738(d).[5]

---

[5]Section 1738(d)(2) states that

The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:

UNDERINSURED COVERAGE LIMITS

By signing this waiver, I am rejecting stacked limits of

8

Appellee alleges that stacking applies to its policy because, while it waived stacking upon initially purchasing a single-vehicle policy, § 1738 required the execution of an additional waiver upon the addition of vehicles to the policy. Appellant, on the other hand, argues that the stacking waiver that Appellee executed upon purchasing the single-vehicle policy remained valid as to the multi-vehicle policy. As discussed below, the resolution of this case requires us to interpret two potentially conflicting decisions of the Supreme Court of Pennsylvania (the "Court").

In *Sackett v. Nationwide Mutual Insurance Co.* (*Sackett I*), 919 A.2d 194 (Pa. 2007), the Court decided whether the MVFRL "require[s] automobile insurers to provide first named insureds the opportunity to waive the stacked limits of uninsured/underinsured (UM/UIM) coverage for each instance an insured purchases UM/UIM coverage by adding a vehicle to an existing policy[.]" *Sackett I*, 919 A.2d at 196. The Court answered that question in the affirmative, holding that interpretation of § 1738 as a whole "leads to one conclusion—that Section 1738 . . . can only be read to require that when a new car is added to an existing policy and UM/UIM coverage is purchased insurers must provide new Section 1738(d) stacking waivers in order to permit the

---

underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

9

insured to waive the increased amount of available stacked UM/UIM coverage." *Id.* at 196-97. The case addressed a situation in which the insureds initially insured two vehicles on a single policy for which they executed a § 1738(d) stacking waiver. *Id.* at 197. The insureds added a third vehicle to the policy, but did not sign another § 1738(d) waiver. The insureds subsequently sought $300,000 in UIM coverage, $100,000 for each of the three vehicles insured under the policy. *Id.*

The *Sackett I* Court considered the "narrow question . . . [of] whether the [insureds'] purchase of the subject [UIM] coverage occurred when the policy incepted, or [whether] another purchase occur[red] when they . . . acquired [the third vehicle] and added it to their policy"—

> The [insureds] could not have purchased [UIM] coverage for the [third vehicle] *prior* to its acquisition, because they would have had no insurable interest related to it . . . [, i.e., they] could not purchase [UIM] coverage for an automobile they had not yet acquired. . . . Section 1738(c), read as a whole, makes it clear that an insurer must provide a stacking waiver each time a new vehicle is added to the policy because the amount of coverage that may be stacked increases.

*Id.* at 201-02. While the Court noted that there "will be *some* cost attendant to compliance with" its holding, it maintained that "the cost containment objectives addressed in [prior MVFRL case law] are not at odds or inconsistent with the instant decision. . . . [W]e simply cannot look past the plain language of Section 1738 given that we find no lack of clarity in the statute. The plain language of Section 1738 will not yield to a policy goal, even one as laudable as the cost containment objective of the MVFRL." *Id.* at 201 (emphasis

in original) (footnotes omitted).

Had *Sackett I*'s holding been left undisturbed, we would undoubtedly affirm the District Court. However, in *Sackett v. Nationwide Mututal Insurance Co.* (*Sackett II*), 940 A.2d 329 (2007), the Court modified *Sackett I* after rehearing, a decision motivated by the Pennsylvania Insurance Commissioner's concern as to the effect that *Sackett I*'s "central conclusion that the addition of a new vehicle to an existing multi-vehicle policy unambiguously constitutes a new purchase of coverage" might have on the "newly acquired vehicle clause."[6] *Sackett II*, 940 A.2d at 331.

In *Sackett II*, the Court reevaluated its definition of "purchase" in light of the Insurance Commissioner's submission, which, according to the Court, noted that "the 'purchase' of UM/UIM coverage under Section 1738(c) is a term of art in the automobile insurance arena that does not subsume the extension, under a contractual after-acquired-vehicle provision, of the pre-existing policy terms of a multi-vehicle policy to a newly-acquired automobile." *Id.* at 333. The Court thus "clarif[ied] that *Sackett I* does not preclude the enforcement of an initial waiver of stacked UM/UIM relative to coverage extended under after-acquired-vehicle provisions of an existing multi-vehicle policy"—

> To the degree that coverage under a particular after-acquired-vehicle provision continues in effect throughout the existing policy period, subject only to conditions subsequent such as notice and the payment of premiums, . . . we clarify that *Sackett I* should not disturb the effect of an initial UM/UIM stacking

---

[6]*See* n.3, *infra*.

11

waiver obtained in connection with a multi-vehicle policy. Again, our reasoning is that the term "purchase," as specially used in Section 1738, does not subsume such adjustments to the scope of an existing policy containing such terms.

We hold that the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage for purposes of Section 1738(c), and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers.[5]

940 A.2d at 333-34 (footnote in original). Footnote 5, however, confines this holding to "the scenario involving the addition of a vehicle to a multi-vehicle policy," expressly stating that the Court was not "resolv[ing] . . . arguments concerning situations involving additions to single-vehicle policies." *Id.* at 334 n.5.

The *Sackett II* majority also purported to limit its holding based on the type of after-acquired-vehicle clause contained in the relevant policy:

where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy . . . *Sackett I* controls and requires the execution of a new UM/UIM stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue in effect subsequent to such expiration.[6]

12

Id. at 334 (footnote in original).  Paradoxically,[7] the footnote accompanying this text indicates that the wording of the after-acquired-vehicle clause in the Sacketts' policy could not have been considered by the Court, because it was never made part of the record.  It thus appears that any rule of law based on the specific wording of an after-acquired-vehicle clause could meet the "classic [definition of] *obiter dicta*: 'statement[s] of law in the opinion which could not logically be a major premise of the selected facts of the decision.'" *United States v. Warren*, 338 F.3d 258, 265 (3d Cir. 2003) (quoted reference omitted) (second alteration in original); *accord Commonwealth v. Firman*, 789 A.2d 297, 301 n.8 (Pa. Super. Ct. 2001) (defining "dicta" as "'[e]xpressions in [a] court's

---

[7]*Sackett II* included a strongly worded dissent:
[T]he Majority does its best to make lemonade out of the lemon that is *Sackett I*. [Their] focus allows these particular appellants to retain their windfall, but at the same time reduces the overall exposure of the automobile insurance industry.  The Majority thus notes that, based upon decisions from other jurisdictions, there may be two types of after-acquired vehicle provisions in Pennsylvania automobile insurance policies, offering different durations of "automatic coverage[]" [and] . . . suggests that a new rejection of stacking may be required "where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy." Thus, the scope of coverage, and the prospect of recovery for future litigants, will depend upon which type of provision is in the policy. We do not know the answer to that question in this case—because it was not an issue until now—and so appellants are awarded coverage by default . . . .
940 A.2d at 335-36 (Castille, C.J. dissenting) (citation omitted).

13

opinion which go beyond the facts before [the] court'"
(quoted reference omitted) (third alteration in original)).

*Sackett II*, in both limiting its holding to multi-vehicle
policies and stating that the validity of *Sackett I* depends on
the wording of a clause that was not in the record before the
Court, creates an ambiguity for us as to how the Court would
decide the current case.[8]  We are nonetheless obliged to
predict how the Court would rule on the issue.  *See USX
Corp. v. Liberty Mutual Insurance Co.*, 444 F.3d 192, 199
n.13 (3d Cir. 2006).

Pennsylvania's Statutory Construction Act, 1 PA. CONS.
STAT. ANN. § 1501 *et seq.*, directs that the "object of
interpretation and construction of all statutes is to ascertain
and effectuate the intention of the General Assembly[,] [t]he
clearest indication of [which] is generally the plain language
of a statute." *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004)
(internal citations omitted).  Under the Act, while "words and
phrases are to be construed according to the rules of grammar
and their common and approved usage . . ., technical words
and phrases, and such others as have acquired a peculiar and
appropriate meaning, are to be construed in accordance with
such peculiar and appropriate meaning or definition." *Sackett
II*, 940 A.2d at 333 (citing 1 Pa.C.S. § 1903(a)).  The *Sackett
II* Court thus explained that its change of opinion regarding
the definition of the term "purchase" as used in section
1738(c) was motivated by the Insurance Commissioner's

<hr />

[8]We note that the Court has been divided on this issue,
with *Sackett I* being a 4 to 2 decision and *Sackett II* a 4 to 3
decision.  Also noteworthy is the fact that the composition of the
Court has changed since the decision of *Sackett II*.

14

submission in support of reargument,[9] which, according to the Court, indicated that "the 'purchase' of UM/UIM coverage under § 1738(c) is a term of art in the automobile insurance arena that does not subsume the extension, under a contractual after-acquired-vehicle provision, of the pre-existing policy terms of a multi-vehicle policy to a newly-acquired automobile." *Id.* at 333-34.

We note that, while *Sackett II* may imply otherwise, the Insurance Commissioner's submission in support of reargument of *Sackett I* did not distinguish between single- and multi-vehicle policies when defining "purchase"—

> under the [Insurance] Department's interpretation and implementation of section 1738, once unstacked coverage is chosen and a policy issued on that basis,

---

[9]In explaining why it was relying on the Insurance Commissioner's opinion, the Court noted that

> the substantial context furnished by the Insurance Commissioner reveals an ambiguity in Section 1738(c), which permits the application of principles of statutory construction, including the precept that the intention of the General Assembly may be ascertained by considering, among other matters, the administrative interpretation of the statute. *See* 1 Pa.C.S. § 1921(c)(8). Given the Insurance Department's legislatively prescribed role in the administration and enforcement of the MVFRL, its substantial expertise, and its possession of the tools necessary to verify the impact of its interpretations upon the remedial purposes of the MVFRL, we afford substantial deference to its interpretation in the present instance insofar as it is consistent with actual policy terms[.]

*Sackett II*, 940 A.2d at 333 n.4 (internal citations omitted).

15

the mere subsequent addition of a vehicle (an 'add-on')
to the policy is not 'the new purchase of coverage' that
would require a new waiver under section 1738.  No
new waiver is necessary because the policyholder has
already decided that the policy is to be issued on an
unstacked basis and any subsequently added vehicle
enjoys the coverages already present in the existing
policy.

Statement of Commonwealth of Pennsylvania Insurance
Commissioner and Department in Support of Application for
Reargument at 8, *Sackett v. Nationwide Mut. Ins. Co.*, 934
A.2d 1155 (Pa. 2007) (8 WAP 2006) (granting reargument).
The Insurance Commissioner has consistently maintained that
"'Section 1738 permits single vehicle policy stacking and
requires that insureds have the opportunity to waive this
coverage.'" *Craley v. State Farm Fire and Casualty Co.*, 895
A.2d 530, 537-38 (Pa. 2006) (quoting Insurance
Commissioner and addressing inter-policy stacking).

Given the great deference afforded to the Insurance
Commissioner in *Sackett II*, and the Statutory Construction
Act's requirement that technical words be construed with their
appropriate meaning, we predict that the Supreme Court of
Pennsylvania would extend its ruling in *Sackett II* to the
single-vehicle policy at issue here.  Section 1738(c) states that
a named insured "purchasing uninsured or underinsured
motorist coverage for more than one vehicle under a policy
shall be provided the opportunity to waive" stacking.
According to the Insurance Commissioner, as noted *supra*, the
mere addition of a vehicle to an existing policy is not a
purchase.  Section 1738(c) thus did not require Appellant to
provide Appellee with the opportunity to waive stacking upon
the addition of the second and third vehicles to the policy; the
waiver signed at the inception of the policy remained valid

16

upon the addition of those vehicles and the subsequent renewals of the policy.

This decision is consistent with "the primary purpose of the MVFRL, and especially the 1990 amendments of which Section 1738 was a part, [which] was to control the cost of insurance such that a higher percentage of drivers would be able to afford insurance." *Everhart v. PMA Insurance Group*, 938 A.2d 301, 306 (Pa. 2007) (citing *Craley*, 895 A.2d at 541 n.17 (Pa. 2006)). It is also consistent with the waiver executed by Appellee, in which he agreed that he was rejecting stacked UIM coverage in exchange for a lower premium. *Cf. Rupert v. Liberty Mutual Insurance Co.*, 291 F.3d 243, 249 (3d Cir. 2002) ("Allowing [an insured] to reap the benefits of stacked coverage without having paid for stacked coverage not only seems unfair, but could compromise the legislative goal of reducing the cost of insurance.").

For the aforementioned reasons we will reverse the decision of the District Court and remand with directions to enter summary judgment in favor of Appellant.

17