**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 17-3117

———————

SHAWN MURRAY,
                                        Appellant

v.

DANIEL KEEN, Warden, Franklin County Jail; RUSSELL ROUZER, Deputy Warden
of Inmate Security, Franklin County Jail; MICHELLE WELLER, Deputy Warden of
Inmate Services, Franklin County Jail; CAROL LEMASTER, Inmate Records, Franklin
County Jail; JESSICA STERNER, Director of Treatment, Franklin County Jail; DAVID
S. KELLER, Director of Treatment, Franklin County Jail; ROBERT L. THOMAS,
Commissioner, Franklin County; ROBERT ZIOBROWSKI, Commissioner, Franklin
County; DANE ANTHONY, Sheriff, Franklin County; DOUGLAS W. HERMAN,
President Judge and member of Franklin County Jail Oversight Board; MATTHEW D.
FOGAL, District Attorney, Franklin County and member of Franklin County Jail
Oversight Board; CAROL DILLER, County Controller, Franklin County and member of
Franklin County Jail Oversight Board; NURSE JANE DOE, Booking Intake Nurse,
Franklin County Jail; TAMMY HECKMAN, Business Director of Inmate Accounts,
Franklin County Jail

———————————————————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 4-13-cv-00258)
District Judge: Honorable Matthew W. Brann

———————————————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 23, 2018
Before:  GREENAWAY, JR., BIBAS and ROTH, Circuit Judges

(Opinion filed:  February 20, 2019)

————————

OPINION*

————————

PER CURIAM

Pro se Appellant Shawn Murray appeals from an order of the District Court

granting summary judgment to Appellees. For the following reasons, we will affirm.

I.

Murray filed a civil rights complaint in the District Court against the Appellees

(jail officials and staff) for events that occurred while he was as a pretrial detainee at

Franklin County Jail.[1] One of the complaint's claims was that the constant illumination

in the jail amounted to a constitutional violation. Each jail cell is lit with a 40-watt bulb

and two 28-watt bulbs over the commode and sink from 6:00 a.m. until 10:00 p.m., at

which point a seven-watt "night light" comes on until 6:00 a.m. Murray alleged that the

constant illumination caused him to suffer sleep deprivation, eyesight deterioration,

psychological problems, and headaches. After the District Court granted a motion to

dismiss as to several claims and defendants early in the litigation,[2] the remaining

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

[1] Murray is no longer incarcerated.

[2] In his briefs, Murray does not challenge the District Court's dismissal of these
defendants and claims, so we do not consider them here. See United States v. Menendez,
831 F.3d 155, 175 (3d Cir. 2016).

Appellees were Daniel Keen, Russell Rouzer, and Michelle Weller; constant illumination was the only remaining claim. Eventually, the Appellees filed a motion for summary judgment. The District Court granted the motion for summary judgment, concluding, among other things, that the jail's lighting did not amount to a constitutional violation.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. See Gen. Ceramics Inc. v. Firemen's Fund Ins. Cos., 66 F.3d 647, 651 (3d Cir. 1995). We review de novo the District Court's summary judgment order. See State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the summary judgment record which demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the non-moving party must then point to specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(c)(1), (e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All facts are viewed in the light most favorable to the non-moving party; all reasonable inferences are made in his favor. See Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994).

## III.

3

Typically, a prisoner challenging the conditions of his confinement asserts claims under the Eighth Amendment's prohibition of cruel and unusual punishment. See, e.g., Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). However, Murray was a pretrial detainee whose claim had to be evaluated under the Due Process Clause of the Fourteenth Amendment. See Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005) (citing Bell v. Wolfish, 441 U.S. 520, 535–36 (1979)). Under the Due Process Clause, "the proper inquiry is whether [the challenged] conditions amount to punishment of the detainee." Bell, 441 U.S. at 535. Thus, sentenced prisoners are protected from only punishment that is "cruel and unusual," while pretrial detainees are protected from any punishment. See Hubbard, 399 F.3d at 166-67. In order to determine whether challenged conditions of pretrial confinement amount to punishment, "a court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate purpose. Absent a showing of an express intent to punish on the part of the detention facility officials, that determination generally will turn on whether it has an alternative purpose and whether it appears excessive in relation to that purpose." Id. at 158 (citing Bell, 441 U.S. at 538-39).

We agree with the District Court that summary judgment was appropriate as to Murray's constant illumination claim. Although we have not said so in a precedential opinion, it is likely that constant illumination may, at least under certain or extreme circumstances, amount to a constitutional violation. See Keenan v. Hall, 83 F.3d 1083, 1090–91 (9th Cir. 1996) (considering a claim from a prisoner who suffered "grave"

4

sleeping and other health problems due to large fluorescent lights that constantly illuminated his cell). However, a number of courts have held that continuous lighting is permissible and reasonable when used in support of legitimate penological justifications, like the need for security and the need to monitor prisoners. See, e.g., Chappell v. Mandeville, 706 F.3d 1052, 1059 (9th Cir. 2013); O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987); see also Wills v. Terhune, 404 F. Supp. 2d 1226, 1231 (E.D. Cal. 2005); King v. Frank, 371 F. Supp. 2d 977, 985 (W.D. Wis. 2005) (rejecting a claim based on light from a nine-watt bulb that allowed correctional officers to see prisoners at night). We agree.

In this case, it was undisputed that the night light is a seven-watt light bulb. The Appellees presented evidence that this light provides minimal illumination,[3] and is used at night, according to jail policy, for safety and security needs. Specifically, they presented affidavits from two wardens, who explained that the night light allows correctional officers to ensure that inmates are present and safe in their cells during

---

[3] Murray argues that a bulb's wattage is a less important measurement than the lumens, which determines brightness. He points to evidence indicating that the night light in question produced 402 lumens – which he claims has the same illumination as "daylight." Indeed, his own evidence indicated that the night light may have resulted in the illumination of 76.4 lux. (Lux is a unit of measurement equal to one lumen per square meter.) Direct sunlight, according to his evidence, results in illumination of 100,000 lux. See ECF No. 68 at 45-46. Thus, Murray does not point to any evidence supporting his assertion that 402 lumens is as bright as "daylight." See Fed. R. Civ. P. 56(c)(1), (e); Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006) (explaining that the non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way).

security rounds conducted every 30 minutes, enables prison staff to move safely through the cell blocks, and permits inmates to utilize the toilet facilities in their respective cells. In light of the deference given to prison officials to set policies to maintain security, see Bell, 441 U.S. at 547-48, and the uncontradicted explanation given for the usage of a seven-watt night light, we must conclude that the Appellees provided a legitimate penological justification for the constant illumination. Murray, we note, has not pointed to any evidence supporting the lights were kept on for any impermissible purpose, or for that matter, that a reasonable jury could conclude that minimal lighting was "excessive in relation" to the legitimate penological interests in play. Hubbard, 399 F.3d at 158.[4]

Accordingly, for these reasons, we will affirm the judgment of the District Court.[5]

---

[4] Furthermore, and as the District Court noted, Murray did not point to evidence in the record suggesting any genuine issue as to whether he suffered psychological harm or physical ailments due to the night light. Murray attempts to show that he suffered physical harm by providing copies of his eye exams that took place on November 1, 2012 (while detained at the jail), and March 7, 2014 (after he filed this case). Although there was a change in his prescription (his sphere measurement was -6.00 on November 1, 2012, and -6.50 on March 7, 2014), Murray did not point to evidence that the change in his prescription was due to the constant illumination, nor did he show that this change could be considered unusual "deterioration." Also, Murray did not point to any evidence whatsoever showing that he suffered psychological harm from the constant illumination.

[5] Because the underlying constitutional claim was properly dismissed, Murray has no viable claim that any Appellee effected an unlawful policy or custom. See, e.g., A.M. ex rel. JMK v. Luzerne Cty. Juvenile Det. Ctr., 372 F.3d 572, 580 (3d Cir. 2004). Like the District Court, we do not find it necessary to address the issue of qualified immunity.