NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2994
_____

STACY POWER; AL B. HILL, as Receiver for Credit National Capital, LLC

v.

ERIE FAMILY LIFE INSURANCE COMPANY

Stacy Power,
　　　　　　　　Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cv-02094)
District Judge: Honorable Eduardo C. Robreno

_____

Submitted under Third Circuit LAR 34.1(a)
May 27, 2020

Before: AMBRO, HARDIMAN, and RESTREPO, *Circuit Judges*.

(Filed: May 29, 2020)

_____

OPINION*

_____

HARDIMAN, *Circuit Judge*.

---

　　* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Stacy Power bought a life insurance policy that the Erie Family Life Insurance Company first issued to Stephen Creighton. The policy lapsed when Power failed to timely pay the premiums. Power sued Erie, claiming it breached the duty of good faith and fair dealing by failing to notify him a premium was due. The District Court granted Erie summary judgment and Power appealed. We will affirm.

I

In 2015, Creighton sold his Erie life insurance policy to James Torchia and Marc Celello. The parties sent Erie a change-of-ownership form listing Torchia and Celello as joint owners and beneficiaries, each with the same address in Georgia (the Georgia address). That address belonged to Torchia's business, Credit Nation Capital, LLC. Erie confirmed the change of ownership in a policy endorsement it sent to Torchia at the Georgia address. The policy endorsement stated that the "payor has been changed to James Torchia," and Erie changed the payor address—the address to which it sends non-payment notices—to the Georgia address. That year, the Securities and Exchange Commission sued Torchia, alleging he was running a "Ponzi scheme" through Credit Nation. *SEC v. Torchia*, 922 F.3d 1307, 1312 (11th Cir. 2019).

In January 2016, Torchia and Celello sold the policy to Power by written purchase agreement. Power became the owner and payor, the Power Living Trust became the beneficiary, and Credit Nation retained the file for management purposes. And for reasons unexplained in the record, the parties also verbally agreed that Credit Nation

would pay the policy premiums for four years. Consistent with that arrangement, they sent Erie a change-of-ownership form listing Stacy Power as the owner, but at the Georgia address. They listed Power's home address in South Carolina as the address for the Power Living Trust (the South Carolina address). Erie mailed a policy endorsement confirming these changes to Power at the Georgia address. Erie also changed the payor from Torchia to Power but did not note this change in the policy endorsement. The payor address remained the Georgia address.

In April 2016, a federal district court froze Credit Nation's assets and appointed a receiver to "facilitate the collection, sale, and distribution of assets to repay investors defrauded by [Torchia]." *Torchia*, 922 F.3d at 1312. Power then called Erie and "requested . . . that the owner address be updated" to the South Carolina address. App. 556. Erie's agent asked if Power wanted to change the payor address. Power replied: "I have no authority to do that." App. 331. The agent did not inform Power that he was the payor. Finally, Power asked Erie's agent to contact him "in case anything was to happen" to the policy, and the agent assured him "nothing would happen to the policy without [him] being notified." App. 329–30. Erie sent a letter to Power at the South Carolina address confirming "a change of address was processed on [his] policy." App. 554.

A couple months later, the receiver contacted Power and explained that, under the district court's order, Power could retain ownership of the policy only on certain terms, including that he "assume responsibility for all future premiums." App. 305–06. By letter

dated June 21, 2016, Power accepted the terms and Credit Nation acknowledged his acceptance by email. Its email instructed Power to "update [Erie] with your name and address as the premium payor on record." App. 311–12. It continued, "You will want to make sure you receive any and all correspondence from [Erie] regarding your policy. The current paid-to-date on your policy is: 03/24/2017." *Id.* Despite this instruction, Power did not update Erie with his name and address as the premium payor. As a result, the payor address remained the Georgia address.

Erie sent three non-payment or lapse notices to the Georgia address in February and April 2017, each of which was returned to Erie as undeliverable. The policy states it terminates "when a premium due is not received before the end of the [thirty-one day] grace period." App. 219, 224. The policy also states, "No alteration of this policy and no waiver of any of its provisions shall be valid unless made in writing by us and signed by one of our officers." App. 223. Power failed to pay the premiums within the grace period, and the policy terminated. In June 2017, Power called Erie to pay a premium, and Erie's agent told him the policy had terminated. The agent explained that the policy could be reinstated, but only if the insured submitted an application. Erie sent Creighton two letters inquiring if he wished to apply. Creighton did so, but Erie denied his application.

Power sued Erie in the United States District Court for the Eastern District of Pennsylvania, asserting claims for breach of contract, promissory estoppel, "equitable relief," and negligence. *Power v. Erie Family Life Ins. Co.*, 392 F. Supp. 3d 587, 591

4

(E.D. Pa. 2019). As relevant here, Power argued Erie breached the duty of good faith and fair dealing by failing to notify him that the policy lapsed. The District Court granted Erie summary judgment. *See id.* at 593–94. It reasoned that although Erie's internal business practices provide for notice, those practices exist to "assist Erie and its employees," "do not create a duty on the part of Erie which may be enforced by a third-party payor," and "do [not] modify or supplement the [policy's] express terms and obligations." *Id.* at 592. The Court also observed that Erie sent Power notices, which he did not receive because he "fail[ed] to notify Erie of the correct payor address." *Id.*

Power timely appealed.

## II[1]

We review the District Court's summary judgment de novo. *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 89 (3d Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

Pennsylvania law implies a duty of good faith and fair dealing into every contract. *See Somers v. Somers*, 613 A.2d 1211, 1213 (Pa. Super. Ct. 1992). Good faith is "[h]onesty in fact in the conduct or transaction concerned." *Id.* (quoting 13 Pa. Cons. Stat. § 1201). Examples of bad faith include: "evasion of the spirit of the bargain, lack of

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

5

diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance." *Id.* (quoting *Restatement (Second) of Contracts* § 205 cmt. d (1981)). The duty of good faith "is not divorced from the specific clauses of [a] contract and cannot be used to override an express contractual term." *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 91 (3d Cir. 2000) (citations omitted) (applying Pennsylvania law).

Power's main argument on appeal is that "once [Erie] undertook . . . to [provide non-payment and lapse notices], the law implies a duty by Erie to do so in good faith." Opening Br. 21. The District Court correctly rejected this attempt to give Erie's business practices binding legal effect. The policy terminates "when a premium due is not received before the end of the grace period." App. 224. The policy does not require Erie to remind Power when premiums are due or otherwise notify him before the policy lapses. To impose such a duty would not force Erie to honor in good faith the policy's "specific clauses"; it would saddle Erie with an obligation altogether "divorced from" them.[2] *Northview Motors, Inc.*, 227 F.3d at 91; *see also Murphy v. Duquesne Univ.*, 777 A.2d 418, 434 n. 11 (Pa. 2001) (explaining duty of good faith is "tied specifically to and is not separate from the duties a contract imposes on the parties").

---

[2] That one of Erie's agents may have told Power "nothing would happen to the policy without [him] being notified" does not affect this conclusion. Opening Br. 6. The agent had no power to verbally alter the policy, which says modifications must be made in writing and signed by an Erie officer.

6

The District Court also concluded that even if the duty of good faith was as broad as Power suggests, Erie fulfilled it. Erie sent two non-payment notices and one lapse notice to the Georgia address. We agree with the District Court that it was Power's lack of diligence—not Erie's—that rendered these notices undeliverable. Power knew the payor address was not current, because he told Erie's agent he "had no authority" to change it. And yet, when Credit Nation instructed him to "update [Erie] with [his] name and address as the premium payor on record," App. 311, he did not. Indeed, Credit Nation's email alerted Power to the very risk that now forms the basis for his appeal— that he may not "receive any and all correspondence from [Erie] regarding [his] policy." Simply put, Erie's notice was reasonably calculated to inform Power about the lapse, given the uncertainty that Power's inaction generated.

*        *        *

For the reasons stated, we will affirm the District Court's summary judgment.

7