NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 19-2865

---

JENNIFER GORDON;
VALERIE TANTLINGER;
JENNIFER UNDERWOOD,
ON BEHALF OF THEMSELVES
AND ALL OTHERS SIMILARLY SITUATED,
Appellants

v.

KOHL'S DEPARTMENT STORES, INC.;
CAPITAL ONE, NATIONAL ASSOCIATION

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-00730)
District Judge: Honorable Wendy Beetlestone

---

Submitted under Third Circuit L.A.R 34.1(a)
May 28, 2020

Before: AMBRO, HARDIMAN, and RESTREPO, *Circuit Judges*.

(Filed: June 9, 2020)

OPINION*

HARDIMAN, *Circuit Judge*.

Plaintiffs are customers of Kohl's Department Stores, Inc. They applied for a Kohl's private-label credit card and in the process bought a debt-cancellation product called Kohl's Account Ease (KAE). They sued Kohl's and Capital One, National Association, asserting claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. The District Court granted Kohl's and Capital One summary judgment. We will affirm.

I

Kohl's is a nationwide department store chain based in Wisconsin. For over fifty years, Kohl's has offered private-label credit cards (Kohl's cards), which customers can use to shop at Kohl's. In 2006, Kohl's and Chase Bank USA, N.A. agreed that Chase would issue Kohl's cards and own the customer accounts, and Kohl's would service the accounts. Chase disclosed this arrangement to customers in a Cardmember Agreement the customers received when they applied for a Kohl's card. The Agreement provided:

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

"We may add or delete a term or change any term of this Agreement . . . by furnishing you notice of the change in the manner required by applicable law." App. 282.

In 2011, Capital One bought the Kohl's card accounts from Chase and became the issuer. Capital One gave new customers an updated Cardmember Agreement, but preexisting customers received the updated Agreement only if they requested it.

From 2006 to 2017, most customers who applied for a Kohl's card did so on point-of-sale pin pads. The pin pads prompted them to buy KAE by stating: "I elect to purchase optional [KAE] costing $1.60 per $100 of my ending monthly balance. I received KAE benefit summary/disclosure." App. 142. The benefit summary explained KAE would cancel the balance on the customer's account up to $10,000 when a covered person experienced a qualifying involuntary unemployment, disability, hospitalization, or loss of life. If a customer bought KAE and the issuing bank approved her application for a Kohl's card, Kohl's forwarded the customer's information to Assurant, KAE's third-party plan administrator. Assurant then sent the customer a KAE Amendment to the Cardmember Agreement, which described KAE's terms and conditions in full. One term provided that Chase or Capital One could "change the terms of this Amendment at any time, but adverse changes will not take effect until after [they] have provided [the customer] with written notice and a reasonable opportunity to cancel." App. 213.

In 2011, Capital One grew concerned that because customers rarely received KAE benefits, KAE could attract regulatory scrutiny. So Capital One and Kohl's implemented

changes to make KAE benefits easier for customers to receive. They first instructed Assurant not to enforce certain terms in the KAE Amendments. For example, Assurant did not require customers to: submit a form verifying their claim; comply with a 180-day deadline for claims based on unemployment, disability or hospitalization; or register for state unemployment benefits. Capital One and Kohl's also gave refunds to customers who complained they did not authorize KAE. Capital One and Kohl's did not notify customers about these changes.

Plaintiffs are three customers who applied for Kohl's cards and bought KAE in the process. They sued Kohl's and Capital One on behalf of themselves and a putative class, asserting claims for breach of the implied covenant of good faith and fair dealing and unjust enrichment. As the District Court noted, the theories supporting Plaintiffs' claims initially were "difficult to pin down." *Gordon v. Kohl's Dep't Stores, Inc.*, 172 F. Supp. 3d 840, 853 (E.D. Pa. 2016). But by the time Kohl's and Capital One moved to dismiss the second amended complaint, Plaintiffs alleged "two distinct theories of recovery." *Id.* Under the first theory (the "No Value" theory), Plaintiffs claimed KAE had "little or no value," and they did not enroll in it voluntarily. *Id.* They claimed Kohl's and Chase "unilateral[ly] enroll[ed]" them, which either violated the covenant of good faith as "an improper exercise of [Kohl's and Chase's] right to impose new terms," or was "an instance of unjust enrichment that [fell] completely outside the terms of the Agreements." *Id.* Under the second theory (the "No Authorization" theory), Plaintiffs claimed "any

legal authorization" they gave Kohl's and Chase to enroll them in KAE "was not assigned to Capital One." *Id.* Thus, "[Kohl's and Capital One's] continued billing of Plaintiffs for KAE . . . was either a breach of the implied covenant of good faith and fair dealing arising from [Kohl's and Capital One's] improper exercise of the right to impose new terms, or were acts that fell completely outside the Capital One Cardmember Agreement and by which Defendants were unjustly enriched." *Id.*

Discovery showed that Plaintiffs enrolled in KAE voluntarily, so the No Value theory was "no longer viable." *Gordon*, 2017 WL 3390269, at *9 n.8 & n.9. But in their memorandum of law in opposition to summary judgment, Plaintiffs raised a new argument, without citation to legal authority, that Capital One and Kohl's breached the implied covenant of good faith and fair dealing by failing to notify customers of what Plaintiffs called "material changes to the terms of KAE." App. 660, 677. At oral argument on the motion for summary judgment, Plaintiffs said this theory supported "both" their implied-covenant and unjust-enrichment claims. Dkt. No. 2:15-cv-00730, Doc. 181, pg. 48. But they later clarified it was a mere "component" of their No Authorization theory. Plaintiffs explained that even if they authorized Chase to enroll them in KAE, the material changes Kohl's and Capital One made vitiated the authorization. *Id.*

After oral argument, the District Court correctly understood Plaintiffs as having "clarified that their claims rest[ed] entirely on" the No Authorization theory. *Gordon*,

2017 WL 3390269, at *9 n.8. In a thorough and well-reasoned opinion, the Court rejected that theory and granted Kohl's and Capital One summary judgment. The Court first explained that Plaintiffs' KAE authorization was assigned to Capital One. *See id.* at *10. Next, it held Plaintiffs could not show Kohl's or Capital One "failed to honor the terms of KAE in good faith." *Id.* Even though Plaintiffs "presented evidence that they could have obtained a better deal or refund if they had complained about KAE," they still "received exactly what is described in their KAE contracts." *Id.* Nor could Plaintiffs show Kohl's or Capital One were unjustly enriched, because their collection of KAE fees was "legally justified." *Id.* at *12.

Plaintiffs timely appealed the summary judgment as to Kohl's.

## II[1]

We review the District Court's summary judgment de novo. *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 89 (3d Cir. 2009).

As in the District Court, Plaintiffs' theories on appeal have changed. They say nothing about the two theories they argued in the District Court. Instead, they argue their third theory, and they blame the District Court for "fundamental[ly] misinterpret[ing]" their claims. Opening Br. 1–5. Yet as we noted already, Plaintiffs did not plead this theory, they presented it for the first time in their memorandum of law in opposition to

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.

summary judgment, and they described it as only a "component" of their second theory at oral argument. So we will not reverse the District Court on this ground. *See Caisson Corp. v. Ingersoll-Rand Co.*, 622 F.2d 672, 680 (3d Cir. 1980) ("[A] trial court should not be reversed on grounds that were never urged . . . in the court below.").

Plaintiffs' third theory is unpersuasive in any event. Plaintiffs argue Kohl's breached the implied covenant when it failed to notify customers that it stopped enforcing certain KAE terms and implemented a new refund policy. Specifically, they argue "there was an undeniable gap in the KAE Amendments about providing notice to customers regarding changes to those agreements," and Kohl's acted "arbitrarily and unreasonably" by notifying only "persons who called to complain . . . or [to seek] the benefits of the product." Opening Br. 31–33 (citation omitted). We reject Plaintiffs' premise that Kohl's "change[d]" the KAE Amendments. *Id.* As the District Court correctly noted, Kohl's stopped enforcing its rights under the KAE Amendments; it did not change the Amendments' terms. *See Gordon*, 2017 WL 3390269, at *4 ("Despite these systematic changes in the approval process for KAE claims, the formal terms of KAE were never modified."). Regardless, Kohl's had no duty to notify customers about the changes Plaintiffs contend it made. The KAE Amendments provide that *adverse* changes will not take effect until after the issuing bank provides customers with written notice. To supplement this explicit notice requirement with an implicit one requiring Kohl's to

notify customers about changes *beneficial* to them would "rewrite the contract." *Nemec v. Shrader*, 991 A.2d 1120, 1126 (Del. 2010).

Plaintiffs also argue that if Kohl's is not a party to the KAE Amendments, "Kohl's would still be liable to [them] and other KAE enrollees for unjust enrichment" because of its "limited notice of material changes to KAE's principal terms and conditions." Opening Br. 41, 43. Again, we disagree that Kohl's changed the KAE terms. And Plaintiffs do not deny that the KAE Amendments are valid contracts that govern their payment of KAE fees to Capital One. So they cannot recover those fees from Kohl's in quasi-contract. *See Wood v. Coastal States Gas Corp.*, 401 A.2d 932, 942 (Del. 1979) ("[T]he contract is the measure of [Plaintiffs'] right, [and] there can be no recovery under an unjust enrichment theory independent of it.").

* * *

For the reasons stated, we will affirm the District Court's summary judgment.