**Rasheen GRIFFIN, Appellant**

v.

**HARRISBURG PROPERTY SERVICES, INC.**

No. 10–1053.

United States Court of Appeals, Third Circuit.

Argued on Feb. 9, 2011.

Opinion Filed: April 4, 2011.

Timothy M. Kolman, Esquire, Wayne A. Ely, Esquire (argued), Kolman Ely, Penndel, PA, Counsel for Appellant.

John J. Hare, Esquire (argued), Marshall, Dennehey, Warner, Coleman & Goggin, Philadelphia, PA, Counsel for Appellees.

Before: JORDAN, GREENAWAY, JR., and WEIS, Circuit Judges.

## OPINION

GREENAWAY, JR., Circuit Judge.

Rasheen Griffin ("Griffin") appeals the District Court's November 23, 2009 final judgment and order granting summary judgment to Harrisburg Property Services, Inc. ("HPS") on Griffin's racial harassment claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. On appeal, Griffin contends that the District Court erred in granting summary judgment on Griffin's racial harassment claims; that Griffin had established a basis for punitive damages; and that Griffin had established a claim for retaliation. We disagree. For the following reasons, we will affirm the District Court's judgment and order.

### I. BACKGROUND

We write primarily for the benefit of the parties and recount only the essential facts.

Griffin, an African–American, was employed by HPS as a security officer and supervised by Thomas Kimble ("Kimble"), a Caucasian. In June 2007, Kimble allegedly told Griffin that "[t]he reason we have black people is because God left [sic] in the oven too long." (App. at 216a.) In August 2007, Kimble allegedly said to Griffin that "[t]he reason we have AIDS is because a black man had sex with a monkey in Africa." (*Id.*) Around this time, Kimble also allegedly sent Griffin an unsolicited CD of songs with racial epithets, which Griffin found offensive.

On October 16, 2007, Kimble sent Griffin the following text message while Griffin was off-duty: "Black babies were given wings by God. P.S. God does this mean I'm an angel. God laughed and said no nigga it means you are a. bat." (*Id.* at 368a.) Kimble does not dispute that he sent this text message to Griffin and other individuals. Griffin informed several colleagues that he found the joke offensive. According to Griffin, he confronted Kimble about the offensive text message and Kimble apologized and begged Griffin to delete the text message and not to report him to Human Resources. Griffin asserts that he informed Kimble that he would report him to Human Resources.

On Friday, October 19, 2007, Griffin lodged a complaint with Carol Rossi ("Rossi"), HPS's Vice President of Human Resources. Griffin contends that Rossi agreed that the joke was offensive. Other supervisors who had learned that Griffin was offended by the joke allegedly told Griffin to "lighten up." (*Id.* at 374a.)

On Monday, October 22, 2007, Anne Simmons ("Simmons"), a Human Resources Manager, initiated an investigation at Rossi's direction. Simmons met with Griffin. Griffin related all of the above incidents to Simmons. Griffin also complained to Simmons of racial discrimination with work assignments, other alleged comments made by Kimble, and segregation by race at different work sites. Griffin requested a transfer to a position at another HPS location, 333 Market Street. His request was granted.

Simmons's investigation also included interviews of other employees. Through her investigation, Simmons noted some other incidents where racial jokes were made in the workplace. Additionally, Al Pierce, a security officer at HPS, wrote a letter in response to the situation between Griffin and Kimble, stating that:

> Making light of individuals' accents, religious preferences, etc. seemed to be accepted behavior on the shift level. . . . The officers making the jokes believed that as long as these jokes stayed within certain boundaries and were not made with malicious intent, then they really didn't see a problem with it. Conversely, the officers, myself included, experiencing these things and not bringing them to the attentions [sic] of management only assisted with things progressing to this point.

(*Id.* at 540a.)

As a result of the investigation, HPS concluded that Kimble had sent an inappropriate joke to Griffin. Kimble was disciplined and issued a final warning. HPS conducted a diversity training seminar to educate its staff. Griffin's remaining allegations regarding racial discrimination with work assignments and segregation at different work sites were found to be baseless.

Griffin began working at the 333 Market Street location in November 2007. Kimble was no longer Griffin's supervisor at his new work location. Griffin contends that his supervisor at the new location, Ralph Shaw ("Shaw"), harassed him because of his prior complaints.[1] Griffin further alleges that Pat Shull ("Shull"), HPS's Director of Security, told Doug Brown ("Brown") to target Griffin and make sure Griffin was on his "P's and Q's." (*Id.* at 374a.) Brown allegedly admitted this to Griffin and left his job at HPS because he did not want to harass Griffin. Furthermore, Shull allegedly used Shaw to harass Griffin. Griffin alleges that there was a discriminatory disciplinary system; however, in his deposition he admits that the system was not discriminatory based on race, but rather based on which security officers the supervisors happened to favor.

In December 2007, Griffin filed a written discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), alleging racial harassment and discrimination. In May 2008, Griffin filed a second complaint with the EEOC, alleging that HPS was retaliating against him for his initial complaints.

On September 5, 2008, Griffin filed a complaint in federal court alleging violations of Title VII and violations of 42 U.S.C. § 1981. The complaint did not contain a retaliation claim. On June 1, 2009, discovery closed. On July 6, 2009, Appellee filed a motion for summary judgment.

---

1. Griffin's allegations about Shaw were not pled in his complaint.

On August 4, 2009, Griffin opposed summary judgment and sought to amend the complaint to assert a claim for retaliation.

On November 23, 2009, the District Court entered summary judgment in favor of Appellee asserting that Griffin did not present sufficient evidence to create a genuine issue as to a material fact regarding HPS' liability as an employer. The District Court additionally denied Griffin's request to amend his complaint to include a retaliation claim because Griffin had waited until after discovery was over and dispositive motions had been filed. The District Court did not reach the issue of punitive damages.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction over Griffin's claims, pursuant to 28 U.S.C. § 1331. We have jurisdiction, pursuant to 28 U.S.C. § 1291, to review the District Court's final order.

We review a district court's order granting summary judgment under a plenary standard of review and apply the same standard as the District Court to determine whether summary judgment was appropriate. *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 89 (3d Cir.2009) (citations omitted). We review a denial of leave to amend the complaint for abuse of discretion. *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir.2009) (citation omitted).

## III. ANALYSIS

### A. Racial Harassment Claims

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). We draw all reasonable inferences in favor of the non-moving party. *Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir.2009) (citations omitted). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (citations and internal quotation marks omitted).

Under Title VII, an employer may not "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). A plaintiff may establish that an employer violated Title VII by proving that racial harassment created a "hostile work environment." *Huston*, 568 F.3d at 104.[2] To establish that there was a hostile work environment, the plaintiff must prove:

(1) [the employee] suffered intentional discrimination because of [the] protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected [the employee]; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for employer liability is present.

*Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir.2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006); *see also Huston*, 568 F.3d at 104.[3]

■ We agree with the District Court that Griffin did not establish the existence

---

**2.** "Hostile work environment claims based on racial harassment are reviewed under the same standards as those based on sexual harassment." *AMTRAK v. Morgan*, 536 U.S. 101, 116 n. 10, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

**3.** The elements of a racially hostile work environment are the same under Title VII and § 1981. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183–84 (4th Cir.2001); *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1050 (8th Cir.2002).

of a genuine issue of material fact regarding employer liability.[4] The fifth element of establishing a hostile work environment depends on whether the harasser is the victim's supervisor or merely a co-worker. *Huston,* 568 F.3d at 104. Where the harasser is a supervisor,

> An employer is subject to vicarious liability to a victimized employee.... When no tangible employment action is taken, a defending employer may raise an affirmative defense ... compris[ing] two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any [ ] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). Where the harasser

is a co-worker, the employer is not automatically liable. *Huston,* 568 F.3d at 104. Rather, when the harasser is a co-worker, employer liability attaches "only if the employer failed to provide a reasonable avenue for complaint, or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and appropriate remedial action." *Id.*

We must first determine whether Kimble was a supervisor or co-worker. The District Court assumed that Kimble was a supervisor because the parties had not disputed his status as a supervisor.[5] We disagree. In light of the evidence, Kimble cannot fairly be said to have been a "supervisor" as that term is used in federal employment law. Courts have consistently distinguished employees "who are supervisors merely as a function of nomenclature from those who are entrusted with actual supervisory powers." *Parkins v. Civil Constructors,* 163 F.3d 1027, 1033 (7th Cir.1998). This Circuit has not explicitly defined a supervisor for employer liability, but we find *Huston* instructive.[6]

**4.** In light of this conclusion, we need not address Appellees' alternate argument that the other four elements of racial harassment had not been met. Of course, the issue of punitive damages need not be reached here as well absent a finding for Griffin. Punitive damages are available in Title VII claims and "are limited ... to cases in which the employer has engaged in intentional discrimination and has done so with 'malice or with reckless indifference to the federally protected rights of an aggrieved individual.' " *Kolstad v. Am. Dental Ass'n,* 527 U.S. 526, 529–30, 119 S.Ct. 2118, 144 L.Ed.2d 494 (citing 42 U.S.C. § 1981a(b)(1)) (noting that while the egregiousness of the behavior is relevant, evidence of the defendant's bad motive is still required to award punitive damages). Griffin does not establish HPS's liability and makes no allegations that HPS acted with malice or reckless indifference to his rights. Accordingly, we disagree with Griffin that he has established a basis for entitlement to punitive damages.

**5.** Although the District Court assumed that Kimble was a supervisor, it nevertheless applied the standard for co-worker harassment.

**6.** The Circuits are not entirely consistent in defining "supervisor" under the *Ellerth* and *Faragher* standard. The majority hold that an employee is a "supervisor" only if the employee has the power to take tangible employment action against the victim, such as the authority to hire, fire, promote, or transfer an employee. *See, e.g., Noviello v. City of Boston,* 398 F.3d 76, 95–96 (1st Cir.2005) (citations omitted) (adopting the majority approach that supervisory authority must consist of the power to take tangible employment action); *Mikels v. City of Durham,* 183 F.3d 323, 333–34 (4th Cir.1999) (same); *Parkins,* 163 F.3d at 1034 ("Absent an entrustment of at least some of th[e] authority [to take tangible employment action], an employee does not qualify as a supervisor[.]"). The Second Circuit adopted a broader definition, that the alleged harasser is a supervisor if he or she possessed the authority to direct the employee's daily

In *Huston*, this Circuit considered who qualifies as a "management-level employee" for purposes of imputing constructive notice to an employer in a co-worker harassment case. We found that an employee's knowledge could be imputed "where the employee is sufficiently senior in the employer's governing hierarchy, or otherwise in a position of administrative responsibility over employees under hi m, such as a departmental or plant manager, so that such knowledge is important to the employee's general managerial duties." *Id.* at 107. "[M]ere supervisory authority over the performance of work assignments by other co-workers is not, by itself, sufficient to qualify an employee for management level status." *Id.* at 108. Rather, the employee must "have a mandate generally to regulate the workplace environment. . . ." *Id.* (holding that employees were not management-level because they did not have the authority to hire, discipline, and discharge and they generally performed the same functions as the employees they oversaw).

Kimble's title at HPS was "security supervisor." When he is the security supervisor on a particular shift, he oversees six to seven people. However, the record indicates that he only worked as a security supervisor one day a week and the remaining four days a week he worked as a security officer. He was essentially performing the same function as Griffin and the other employees he oversaw. We cannot conclude that the nomenclature of his title signified his status as a supervisor

such that HPS would be liable for his actions. *See Huston,* 568 F.3d at 104; *Parkins,* 163 F.3d at 1033. Griffin does not assert that Kimble had the authority to hire, fire, or discipline, or that Kimble was sufficiently senior in the employer's governing hierarchy. *See Huston,* 568 F.3d at 104. On this record, we do not believe that Kimble was a "supervisor" for purposes of determining employer liability.

■ Thus, we analyze employer liability under the co-worker harassment standard and determine whether HPS took adequate remedial action. *Id.*[7] An employer's remedial action is adequate if it is "reasonably calculated to prevent further harassment." *Id.* at 110 (citing *Knabe v. Boury Corp.,* 114 F.3d 407, 412 n. 8 (3d Cir.1997)). Typically, the timing and nature of the employer's response will dictate the adequacy of the remedial action. *Andreoli v. Gates,* 482 F.3d 641, 644 (3d Cir.2007) (noting that an investigation that commenced one day after the employer was notified was adequate but that waiting months to investigate harassment would not be adequate).

In *Huston,* we held that there was no genuine issue as to a material fact regarding whether the employer's remedial action was adequate because the employer had launched an investigation the day Huston filed her complaint, moved her to a different team where she did not work with the alleged harassers, interviewed the individuals who Huston mentioned in her complaint, and disciplined employees who

---

work activities. *Mack v. Otis Elevator Co.,* 326 F.3d 116, 126–27 (2d Cir.), *cert. denied,* 540 U.S. 1016, 124 S.Ct. 562, 157 L.Ed.2d 428 (2003).

**7.** Under *Huston,* employer liability attaches if the employer "failed to provide a reasonable avenue for complaint, or, alternatively, if the employer knew or should have known of the harassment and failed to take prompt and

appropriate remedial action." 568 F.3d at 104. Griffin does not allege that he did not have a reasonable avenue for complaint. He alleges that he lodged a complaint with Human Resources three days after receiving Kimble's text and that Human Resources initiated an investigation the following business day after he complained. Thus, we need only look at whether HPS took adequate remedial action.

violated company policies. 568 F.3d at 105, 110. Additionally, no further harassment occurred after her complaint. *Id.* at 110.

In the present case, HPS commenced an investigation on the following business day after Griffin's complaints. Griffin's request to transfer to another HPS property was granted and HPS conducted an in-house diversity training program to educate its staff. Simmons investigated all of Griffin's complaints. As a result of the investigation, HPS disciplined Kimble and issued him a final warning. Certainly HPS could have taken additional steps to address Kimble's offensive behavior. However, in light of *Huston* and *Andreoli*, we believe that commencing an investigation immediately, granting Griffin's transfer, disciplining Kimble, and instituting diversity training was adequate remedial action. Accordingly, we hold that no genuine issue of material fact exists as to whether HPS took adequate remedial action.

Griffin alleges that further harassment took place. Specifically, Griffin alleges that the disciplinary system itself was discriminatory, that Shull harassed him, and that Shaw, his subsequent supervisor, harassed him about his complaints of discrimination. As the District Court explained in its opinion, Griffin himself concedes that the disciplinary system was not discriminatory based on race, but, rather, based on favoritism, and that Shull never did anything to harass him. As for discrimination by his new supervisor, Shaw, these allegations are not part of the complaint in this case and, thus, shall not be considered in determining whether harassment took place after Griffin's complaint.

We will affirm the District Court's grant of summary judgment in favor of HPS on Griffin's Title VII and § 1981 claims.

## B. *Retaliation Claim*

■ Griffin urges us to consider his retaliation claim for which the District Court denied leave to amend. We shall determine whether the District Court abused its discretion in denying Griffin leave to amend.

A party may amend its pleading once as a matter of course any time before a responsive pleading is served. FED.R.CIV.P. 15(a). Where a defendant responds to a complaint with a motion to dismiss, "the plaintiff may amend the complaint once 'as a matter of course' without leave of court." *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000) (citation omitted). While the grant or denial of leave to amend is left to the discretion of the district court, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.* (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (internal quotation marks omitted)). Justifications for denial of leave to amend include "undue delay, bad faith, dilatory motive, prejudice, and futility." *Id.* (citations and internal quotation marks omitted).

The District Court denied Griffin's motion to amend the complaint for his retaliation claim, stating that

Griffin's retaliation claim involves different elements, different facts, and different parties than his harassment claim. *Compare* 42 U.S.C. § 2000e–2(a) *with* 42 U.S.C. § 2000e–3(a). It would require the reopening of discovery resulting in additional expense, delay, and undue burden on HPS. Griffin has been represented by counsel throughout the course of this case, and his claim of retaliation pre-dates the filling of this suit. Griffin could have brought a retaliation case at

the same time as his discrimination claim but he did not do so. It is unclear why Griffin did not raise these claims earlier, but the court will not permit Griffin to amend his complaint after discovery has closed and dispositive motions are filed based on facts which were known to him at the time he commenced this case. As such, the court will limit its inquiry to only those facts supporting Griffin's harassment claim.

(App. at 6a n. 4.) In this case, the District Court did not abuse its discretion. The District Court rightly explained that it denied leave to amend because granting leave would result in "undue delay." *See Shane,* 213 F.3d at 115.

## IV. *CONCLUSION*

For the reasons discussed above, we will affirm the District Court's order and judgment.

