NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-4231

_____

STEVEN JEWELL,
                    *Appellant*

v.

RIDLEY TOWNSHIP; ROBERT M. SMITH, JR.;
ROBERT M. SMITH, SR.; LUIGI DISPIGNO;
JOSEPH CERRONE; MICHAEL A. BONGIORNO;
JERRY SCANLON, JOHN DOES 3-10

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-09-cv-04947)
District Judge:  Honorable R. Barclay Surrick

_____

Submitted Under Third Circuit LAR 34.1(a)
September 18, 2012

Before: SLOVITER, RENDELL, and HARDIMAN, Circuit Judges

(Filed: September 19, 2012 )

_____

OPINION

_____

SLOVITER, *Circuit Judge*.

This case concerns a tragic accident caused by an eighteen-year-old unlicensed intoxicated driver who refused to pull over for the police. The pursuit ended when the drunk driver collided with a vehicle in which the plaintiff Steven Jewell was a passenger. Jewell suffered serious injuries, including paralysis. He filed a complaint, naming the officers involved in the pursuit—Corporal Michael A. Bongiorno and Officer Gerard Scanlan (collectively "the Officers")—and the Township of Ridley ("Ridley") as defendants (collectively "the Defendants"),[1] and asserting claims under both 42 U.S.C. § 1983 and Pennsylvania tort law. Despite our sympathy for Jewell, we affirm the District Court's grant of summary judgment in favor of the Defendants.

## I.

### Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and this court has jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over the District Court's order granting summary judgment. *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 89 (3d Cir. 2009). Summary judgment must be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[1] The complaint also named various other individuals as defendants, all of whom have been dismissed from this action.

2

## II.

## Background

At approximately 10:45 PM on April 29, 2009, Ridley Township Police received a tip that eighteen-year-old Robert Smith, Jr. was driving a blue Hyundai Santa Fe while intoxicated. Corporal Bongiorno, who knew that Smith did not have a valid driver's license, and Officer Scanlan, who knew Smith from previous arrests, responded to the tip by driving in separate vehicles to Smith's home. While the Officers were sitting in their parked cars at the street corner, a blue Santa Fe approached with only the parking lights on. The driver turned the lights off, passed directly by the Officers, and turned away down another street. Upon recognizing Smith as the driver, Corporal Bongiorno began pursuing him with activated lights and sirens, and Officer Scanlan followed.

Smith swerved throughout the pursuit, which wound through just over a mile of residential streets at speeds between fifteen and thirty-five miles per hour. Neither Smith nor the Officers stopped at traffic signals or stop signs. Suddenly, Smith accelerated to about forty-six miles per hour, ran a red light, and collided with a car in the middle of the intersection. Jewell was a passenger in that car, and he suffered multiple injuries, including paralysis. Smith's blood alcohol level was 0.228, which is well above the legal limit.

Both Officers had received basic pursuit training at police academies and also received additional training when beginning work in Ridley. *Cf.* 37 Pa. Code § 203.1-203.103 (outlining the administration of the Municipal Police Officers' Education and

Training Program).  Both of the Officers were aware of the Ridley policy on police

pursuits, which provides:

SECTION 17: PURSUITS

a. Notify Police radio immediately when initiating a pursuit. (State the reason)

b. When notifying radio, state "Emergency Pursuit".    When acknowledged by radio, continue as follows:
    1.  Pursuit of vehicle
    2.  Route taken by fleeing vehicle
    3.  Description of vehicle and occupants
    4. Pursuing Police vehicle shall give radio its location periodically to assist other units in the apprehension.

c. Only the Police vehicle initiating the pursuit may use siren when in visible pursuit of the fleeing vehicle.

d. If Police vehicle in pursuit has lost visible contact with the fleeing vehicle, the operator shall notify radio of the last known location and direction of travel.  Police vehicle shall discontinue the use of the siren and reduce speed.

e. If another Police vehicle resumes visible contact with fleeing vehicle,  operator shall notify radio and may take up pursuit using lights and siren.

f. All pursuits shall be terminated when the violation leading to the pursuit is of such minor nature as to make a high risk of a pursuit unreasonable.

g. The Commanding Officer on shift will evaluate and may terminate a pursuit at their discretion.

h. Police vehicles are not to be used as ROAD BLOCKS.

4

J.A. at 686-87 (hereinafter "pursuit policy"). Pursuits are further governed by the Pennsylvania Motor Vehicle Code. *See* 75 Pa. Cons. Stat. Ann. § 6342 (requiring every police department to implement a written policy to govern motor vehicle pursuits).

Jewell filed a complaint against Ridley Township, Corporal Bongiorno, and Officer Scanlan, asserting claims under 42 U.S.C. § 1983 and Pennsylvania tort law. The District Court granted summary judgment for Ridley and the Officers, and Jewell appealed.

## III.

## Analysis

A.  The § 1983 Claims

Jewell argues that Ridley violated his constitutional rights by its "failure to have an adequate policy in place governing police pursuits, its failure to properly train its officers in the conduct of such pursuits, and its failure to properly supervise its officers during such pursuits." Appellant's Br. at 22. The District Court granted summary judgment for the Defendants by holding, inter alia, that Ridley's pursuit policy was not constitutionally inadequate and that Jewell failed to demonstrate that Ridley exhibited deliberate indifference through its allegedly inadequate training and supervision.

1.  Pursuit Policy

A municipality may only be held liable under § 1983 if the plaintiff identifies a municipal "policy" or "custom" that was the "moving force" behind the injury. *Monell v.*

5

*Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 400 (1997).

Ridley's pursuit policy does not precisely mirror the model policy suggested in the Pennsylvania Motor Vehicle Code, but it was not the "moving force" behind Jewell's injuries. The pursuit policy provides that a pursuit "shall be terminated when the violation leading to the pursuit is of such minor nature as to make a high risk of a pursuit unreasonable" and that it is within the commanding officer's discretion to terminate a pursuit. J.A. at 687. The Officers both understood the pursuit policy to require a pursuit to be terminated if it becomes unsafe. The pursuit policy was thus adequate to alert officers to their duty not to engage in unreasonably dangerous pursuits. We agree with the District Court that it was Smith who "was without question a danger to the community," and that "[t]his unfortunate accident was caused by a drunk driver, not by an inadequate or deficient pursuit policy." J.A. at 19.

2.  Training

Jewell also argues that Ridley failed to adequately train its employees as to how to conduct police pursuits. In *City of Canton v. Harris*, the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." 489 U.S. 378, 388-89 (1989) ("Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality-a 'policy' as defined by our prior cases-can a city be liable for such a failure under § 1983."). The Supreme Court has

also noted that "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011) (citation omitted).

Although the Officers did not remember the details of the training they received about pursuits, both Officers were generally familiar with Ridley's pursuit policy. The Ridley Police had assisted pursuits in neighboring towns, but had not been the lead car in a pursuit for at least four years. Without a pattern of constitutional violations during police pursuits involving the Ridley police, we cannot conclude that Ridley exhibited deliberate indifference in its efforts to train its officers when it provided enough training for its officers to be generally familiar with the pursuit policy. *Cf. id* at 1363 ("[S]howing merely that additional training would have been helpful in making difficult decisions does not establish municipal liability."). We therefore agree with the District Court's holding that Ridley's training on police pursuits does not reflect deliberate indifference to the rights of persons with whom the officers come into contact, and that Jewell's failure-to-train claim fails.

3. Supervision

Jewell argues that Ridley is liable under § 1983 for its failure to supervise its police officers during pursuits. A municipality may be liable for its failure to supervise only if it reflects a policy of deliberate indifference to constitutional rights. *See Montgomery v. De Simone*, 159 F.3d 120, 126-27 (3d Cir. 1998).

7

Corporal Bongiorno—the supervisor in this pursuit—testified that he "will not do anything that's going to put someone in direct risk" unless that person is "in a position that [he is] going to be able to hurt someone" because "those people have to be stopped." J.A. at 153. Corporal Bongiorno's statements demonstrate his concern for the safety of the community at large, and that he knows to terminate a pursuit if it becomes too dangerous. We thus agree with the District Court's holding that Corporal Bongiorno did not act with deliberate indifference, and that Jewell's failure to supervise claim fails.

B.  The Negligence Claims

Jewell's remaining claims arise under Pennsylvania state law. Jewell argues that the Officers were negligent in the manner in which they carried out the pursuit while acting within the scope of their employment, and that the Officers and Ridley are therefore liable under the Pennsylvania Political Subdivision Tort Claims Act and state tort law. The District Court held, inter alia, that Jewell failed to demonstrate that the Officers pursued Smith without due regard for the safety of others, and therefore granted summary judgment for the Defendants.

The necessary elements for a negligence claim under Pennsylvania law are "a duty or obligation recognized by the law, requiring the actor to conform to a certain standard of conduct; a failure to conform to the standard required; a causal connection between the conduct and the resulting injury; and the actual loss or damage resulting to the interest of another." *Matthews v. Konieczny*, 527 A.2d 508, 511-12 (1987) (internal quotation marks and citation omitted). Under the Pennsylvania Political Subdivision Tort Claims

8

Act, local agencies are generally not liable "for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," but an exception to this immunity exists for damages arising from "[t]he operation of any motor vehicle in the possession or control of the local agency" and caused by "the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties." 42 Pa. Cons. Stat. Ann. §§ 8541 & 8542(a)-(b). Therefore, all of Jewell's state law claims require proof that the Officers were negligent.

Police officers are granted certain privileges under Pennsylvania law "when in the pursuit of an actual or suspected violator of the law," which allow the officers to "[p]roceed past a red signal indication or stop sign . . . after slowing down as may be necessary for safe operation," to "[e]xceed the maximum speed limits so long as the driver does not endanger life or property," and to "[d]isregard regulations governing direction of movement, overtaking vehicles or turning in specified directions." 75 Pa. Cons. Stat. Ann. § 3105(a)-(b). These privileges only apply when the vehicle's audible and visual signals are in use, *see id.* § 3105(c), and they do not relieve the driver of "the duty to drive with due regard for the safety of all persons." *Id.* § 3105(e).

Here, the lights and sirens of Corporal Bongiorno's car were activated during the pursuit, and the speed of the pursuit did not exceed thirty-five miles per hour until the final moments when Smith suddenly accelerated. The Officers had reason to believe it would be dangerous for Smith to continue driving because they suspected he was drunk and had personally observed his erratic driving. Considering all of the evidence in the

9

light most favorable to Jewell, we conclude that the pursuit was conducted in conformity with the Officers' duty to drive with due regard for the safety of all persons. Accordingly, the Officers were not negligent during the pursuit, and Jewell's state law claims fail as a matter of law.

## IV.

## Conclusion

For the foregoing reasons, we affirm the District Court's grant of summary judgment for the Defendants.