**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3689
_____

LINCOLN DAVE LEVYS, JR.,
                                        Appellant

v.

JOHN V. SHAMLIN; WILLIAM D. MATHIAS;
MORSE, of the City of Pittsburgh P.D. Zone 3 (personal and official capacity);
CITY OF PITTSBURGH P. D.  Zone 3

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 16-cv-01624)
District Judge:  Honorable Nora B. Fischer

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 2, 2019
Before:  GREENAWAY, JR., RESTREPO and FUENTES, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 24, 2020)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Lincoln Levys appeals from an order of the United States District Court for the Western District of Pennsylvania, which granted the Defendants' motion for summary judgment in his civil rights case. We will affirm the District Court's judgment.

Levys filed a complaint[1] alleging that certain police officers (the Defendants), and the City of Pittsburgh, violated his Fourth Amendment rights in connection with unreasonable searches and seizures on September 11, 2014.[2] The Defendants moved to dismiss those claims on the grounds that: (1) Levys failed to allege facts to support a plausible Fourth Amendment claim against the officers; and (2) the officers were, at a

---

[1] The District Court construed Levys's "Opposition and Response to Defendants [sic] Motion for Definitive Statement and Motion to Strike/Dismiss," Dkt. #35, and his "Brief and Response to Motion for Clarification," Dkt. #44, as a Third Amended Complaint; we will do likewise. The District Court had stricken Levys's original complaint and his First Amended Complaint for failure to comply with local rules, and the District Court had treated Levys's Second Amended Complaint as having been superseded by the filings at Dkt. ##35 and 44. See District Court orders at Dkt. ##5, 13, 43 and 45.

[2] Based on the alleged Fourth Amendment violation, Levys also raised a claim of municipal liability under Monell v. N.Y. Department of Social Services, 436 U.S. 658 (1978), against the City of Pittsburgh. Additionally, he presented claims against the officers under the Fifth, Sixth, Eighth, and Fourteenth Amendments, and two criminal statutes. The District Court dismissed Levys's Due Process claims under the Fifth, Sixth, Eight, and Fourteenth Amendments as duplicative of his Fourth Amendment claim, dismissed the criminal violation claims for lack of standing, and denied the Monell claim on the merits. Dkt. #66 at 6, 7 n.6, 15. Levys does not challenge the rulings concerning the criminal statutes and the Monell claim on appeal, so we need not discuss them further. See Sheinberg v. Sorensen, 606 F.3d 130, 133-34 (3d Cir. 2010) (concluding that issue was waived by failure to raise it on appeal). To the extent Levys seeks to pursue on appeal constitutional claims under amendments other than the Fourth, we agree with the District Court that those claims are subsumed by his Fourth Amendment claim, and that those amendments do not provide a separate basis for relief. See Albright v. Oliver, 510 U.S. 266, 273-74 (1994).

minimum, entitled to qualified immunity.  Because the Defendants attached a number of exhibits to their motion to dismiss, and because Levys similarly attached matter outside of the pleadings to his response, the District Court converted the Defendants' motion to one for summary judgment and allowed time for any additional submissions.  Having received none, the District Court then granted the Defendants' motion on the grounds that the officers were entitled to qualified immunity.  Levys timely appealed.

We have jurisdiction under 28 U.S.C. § 1291.  We exercise a plenary standard of review and apply the same standard as the District Court to determine whether summary judgment was appropriate.  See State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009).  Thus, we would normally view the evidence in the light most favorable to Levys.  See Kaucher v County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006).  However, as the District Court noted, at summary judgment, the non-moving party cannot simply rest on his complaint, but must establish a genuine dispute as to a material fact "by 'citing to particular parts of . . . the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials.'"  Guidotti v. Legal Helpers Debt Resolution, L.L.C., 716 F.3d 764, 772 (3d Cir. 2013) (quoting Fed. R. Civ. P. 56(c)(1)(A)).  Given the evidence produced by the Defendants and Levys's failure to support his assertions of factual disputes, we agree with the District Court that the officers were entitled to summary judgment on the issue of qualified immunity.

3

Qualified immunity shields government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The qualified immunity inquiry has two parts: (1) whether the plaintiff demonstrated the deprivation of a constitutional right; and (2) whether that right was established at the time of the alleged deprivation. Saucier v. Katz, 533 U.S. 194, 201 (2001). The Court may address either part of the inquiry first. Pearson v. Callahan, 555 U.S. 223, 236 (2009). In the first part of the inquiry, courts must carefully define, at the appropriate level of specificity, the right that allegedly has been violated. Sauers v. Borough of Nesquehoning, 905 F.3d 711, 716-17 (3d Cir. 2018). But even where a constitutional right has been violated, the qualified immunity standard allows "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Kelly v. Borough of Carlisle, 622 F.3d 248, 254 (3d Cir. 2010) (citations and internal quotation marks omitted); see also Sauers, 905 F.3d at 718-19 (affirming grant of qualified immunity, even though officer's actions were conscience-shocking, as "constitutional liability for actions taken in conscious disregard of a great risk of harm during the course of a police pursuit" was not clearly established at the time of the incident).

The right at issue here is the Fourth Amendment's protection against unreasonable searches and seizures. U.S. Const. amend. IV. Levys claimed that the officers violated

4

his Fourth Amendment rights by: (1) conducting an investigatory stop without reasonable suspicion; (2) searching his yard without consent or probable cause; (3) searching his home without consent or probable cause; and (4) wrongly placing him under arrest. In considering whether the officers are entitled to qualified immunity, we need not determine whether there was a Fourth Amendment violation in the first place; rather, we consider only whether the officers' conduct violated a clearly established constitutional right "of which a reasonable person would have known." See Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted).[3]

We turn first to the officers' investigatory stop of Levys. Searches and seizures without warrants are presumptively unreasonable, but there are exceptions, one of which is a "brief, investigatory seizure commonly called [a] 'Terry stop.'" United States v. Hester, C.A. No. 16-3570, 2018 WL 6259314, at *2 (3d Cir. Nov. 30, 2018) (citing Terry v. Ohio, 392 U.S. 1 (1968)). A police officer may conduct a brief investigatory stop when there is "'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" Navarette v. California, 572 U.S. 393, 396-97 (2014) (quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)). Such a "reasonable suspicion" of criminal activity "'is dependent upon both the content of information

_____

[3] Thus, the fact that a state court granted Levys's motion to suppress does not preclude a finding of qualified immunity. See, e.g., Anderson v. Creighton, 483 U.S. 635, 641 (1987) ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they

5

possessed by police and its degree of reliability.'" Id. at 397 (quoting Alabama v. White, 496 U.S. 325, 330 (1990)). While a mere hunch is not sufficient to establish reasonable suspicion, "the level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." Id. (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

In the night in question, several reports had been made to the 9-1-1 dispatcher that two individuals were involved in a shooting on the 1400 block of Amanda Street and had fled by foot; that two blocks away, there was a prowler in the yard near Levys's residence at 1215 Amanda Street; and that the prowler had discarded clothing in the yard.[4] As Officer Shamlin approached Levys's residence in response to the calls, he saw Levys, who confirmed that he had just come from his house. Officer Shamlin then signaled two officers in a patrol car traveling the opposite direction to stop Levys. The two officers stepped out of the car, stopped Levys, and began to search his person.[5] The officers informed him that they had received reports of a prowler in a nearby yard following the earlier gunfire.[6] Officer William D. Mathias arrived shortly thereafter and stated that the

---

reasonably believe to be lawful—should not be held personally liable.").

[4] This information is imputed to the officers for purposes of the Fourth Amendment inquiry. See United States v. Torres, 534 F.3d 207, 210 (3d Cir. 2008).

[5] Levys argues that the officers approached him with hand on their guns, and that they immediately handcuffed him. But Levys does not point to any evidence in the record to support his assertions.

[6] Levys argues, in turn, that there was no caller, and that the caller was anonymous. But

6

police had received a third call indicating that Levys was the "right person." Considering the totality of the circumstances, reasonable officers in the Defendants' shoes would not have believed that detaining Levys was a violation of his constitutional rights. See Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (noting that officer can consider totality of the circumstances in determining whether he or she has probable cause).[7]

Second, reasonable officers would not have believed that going into Levys's yard was a violation of his constitutional rights, since they had reason to believe that a second person (possibly armed) might be there after fleeing the shooting scene. See Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 298-99 (1967) (concluding that exigent circumstances allowed police to search home without warrant where they were seeking suspect from armed robbery). Accordingly, when the officers saw the marijuana plants in Levys's yard, in plain view, their decision to seize the marijuana and arrest Levys was also justified.[8] See Kentucky v. King, 563 U.S. 452, 462-63 (2011) ("[L]aw enforcement

---

again, he does not support those statements by any reference to evidence in the record. In contrast, the police dispatch records produced in the District Court reflect several callers, and it appears that at least some of those callers identified themselves by name and address (although that information was redacted before it was included in the record).

[7] Levys cites Florida v. J.L., 529 U.S. 266, 270-71 (2000), in which the Supreme Court held that an anonymous tip, without more, did not give police reasonable suspicion for a stop and frisk. But in that case, the call was made from an unknown location by an unknown caller, and the caller did not provide any reasonable basis for the police to suspect J.L. of engaging in unlawful conduct. Here, the caller provided a name and location, and apparently gave a nearly eyewitness account to the 9-1-1 operator about a prowler discarding clothing.

[8] For these reasons, the defendants are also entitled to qualified immunity with respect to

officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made.").[9]

For the foregoing reasons, we will affirm the District Court's judgment.[10]

---

Levys's Fourth Amendment claims for false arrest and malicious prosecution based on the criminal charges against him for the marijuana plants.

[9] Levys's claim that the search of his house was illegal fails because the officers testified under oath that Levys's fiancée consented to the search. Levys did not point to any record evidence to refute that assertion, and in his brief here, he says that he "assumed [his fiancée] gave them permission to search the house because how else would they have gotten in?". Appellant's Brief at 4.

[10] Levys's "Response to Defendants [sic] Motion for Leave to File a Supplemental Appendix" appears to be, in essence, a reply brief. But to the extent that he is asking us to overturn the Clerk's Order granting the Appellees' motion to file a supplemental appendix, his request is denied.